HON. ROBERT SATTER, JUDGE TRIAL REFEREE.
 

 The plaintiffs have brought this action to recover from the defendant the amount of capital contributions to a partnership that the defendant failed to make in violation of a partnership agreement and for damages for the defendant’s anticipatory default on his obligation under a partnership note and mortgage.
 

 The action was initiated by the plaintiff partnership against the defendant, a partner. In order to obviate the matter of the plaintiffs standing to sue;
 
 Johnny cake Mountain Associates
 
 v.
 
 Holby,
 
 Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 545229 (July 11, 1995) (14 Conn. L. Rptr. 380); the plaintiff moved, shortly before trial, to amend its complaint to add the other partners as plaintiffs. This motion was granted.
 

 The facts, essentially undisputed and almost completely stipulated to, are as follows. The individual plaintiffs and the defendant formed a partnership, under the name Canton West Associates in September, 1988, to own and to develop real estate. Paragraph 5 (a) of the partnership agreement provided that each partner would contribute $25,000, and that “[a]ny additional capital which may be required in the business of the partnership shall be contributed by the partners in the same proportion as these initial contributions, unless
 
 *325
 
 otherwise agreed upon by them.” All the partners made the initial capital contribution of $25,000 and additional contributions in the amount of $19,500 between August, 1989, and August, 1990.
 

 In or about November, 1988, the plaintiff partnership purchased from the defendant a parcel of land containing approximately seven acres on Dyer Avenue, Canton, for the sum of $1,600,000, and the partnership and the individual partners became jointly and severally obligated to the United Bank and Trust Company on a promissory note and mortgage for $1,600,000. To pay the interest on that note and the real estate taxes, the partnership determined that each partner would contribute $3000 a month. The defendant made several of these contributions to capital. By February, 1991, however, he was $42,000 in arrears in capital contributions. Despite repeated demands by the plaintiffs, the defendant refused to make up the arrearage.
 

 In or about November, 1989, the individual plaintiffs and the defendant authorized the partnership to enter into a note and mortgage modification agreement with the United Bank and Trust Company for the purposes of extending the maturity date of the original note to November 1, 1990.
 

 On December 17, 1990, Fleet Bank of Connecticut, the successor to United Bank and Trust Company, demanded a pay down in the amount of $600,000 on the note. At a partnership meeting held on February 19, 1990, of which the defendant received notice but did not attend, it was resolved that the $600,000 would be raised by each of the six partners making an additional $100,000 capital contribution to the partnership by March 18, 1991. The defendant failed to pay his $100,000 capital contribution.
 

 On March 18, 1991, another partnership meeting was held, of which the defendant received notice and at
 
 *326
 
 which it was determined that the defendant had breached the partnership agreement by failing to pay duly assessed capital contributions of $142,000. As a consequence of the defendant’s breach, the partners voted to dissolve the partnership, and then to continue the partnership in accordance with paragraph 15 of their partnership agreement.
 

 Paragraph 14 (d) provides that a dissolution of the partnership shall be caused by “ [t]he failure of a Partner to adhere to the terms and restrictions of this Partnership Agreement. ...” Paragraph 15 provides that “[u]pon the dissolution of the partnership . . . the Partners who did not cause the dissolution shall have the right either to elect to continue the partnership or to proceed to wind up its affairs.”
 

 The defendant was notified on March 18, 1991, of his breach of the partnership agreement and that he would be held responsible for his unpaid capital contributions, as well as for his share of any partnership obligations resulting from his breach.
 

 On March 25, 1991, the partnership, through its remaining partners, entered into another loan and mortgage modification agreement with Fleet Bank of Connecticut whereby it reduced the outstanding loan obligation from $1,250,000 to $1,000,000 by the plaintiffs contributing capital to pay principal and interest. On June 30, 1992, the plaintiffs further contributed capital to reduce the principal obligation to $900,000.
 

 The defendant does not dispute that he has not paid to the plaintiffs the $142,000 representing his share of additional capital contributions required of the partners, but defends on two grounds. First, the plaintiffs cannot recover from the defendant without an accounting. Second, upon dissolution of the partnership, the defendant is entitled to be released of all existing liabilities of the partnership.
 

 
 *327
 
 The common-law rule is that a “contribution to the capital of a partnership cannot be recovered in an action at law by one partner against another partner, in the absence of a settlement and the striking of a balance . . . .” 59A Am. Jur. 2d 534, Partnership § 590 (1987). This settlement or “striking of a balance” is achieved by an equitable action for an accounting which entails a comprehensive investigation of partnership transactions and the adjudication of partners’ rights against each other. Id., § 1045, p. 753. As stated in
 
 Weidlich
 
 v.
 
 Weidlich,
 
 147 Conn. 160, 165, 157 A.2d 910 (1960): “A final account is the one great occasion for a comprehensive and effective settlement of all partnership affairs. All the claims and demands arising between the partners should be settled upon such an accounting.”
 

 The Connecticut courts have held, however, that where there are no complex and multifarious partnership transactions, an accounting is not a precondition to partners suing each other.
 
 Mazzella
 
 v.
 
 Lathouris,
 
 Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. CV900109337S (July 26, 1991) (4 Conn. L. Rptr. 323);
 
 Rothstein
 
 v.
 
 Rosenblit,
 
 Superior Court, judicial district of Hartford-New Britain at New Britain, Docket No. CV940543126 (April 24,1995). These cases rely on numerous decisions in other jurisdictions. Thus, in
 
 Hanes
 
 v.
 
 Giambrone,
 
 14 Ohio App. 3d 400, 404, 471 N.E.2d 801 (1984), the court stated: “While recognizing the general rule which prevents the maintenance of an action at law between partners in the absence of an accounting, many courts have held that an action can be maintained by one partner against another, even where the partnership transaction is the basis of the lawsuit, if the facts are such that no complex accounting involving a variety of partnership transactions is necessary.”
 

 Likewise as stated in
 
 Kartalis
 
 v.
 
 Lakeland Plaza Joint Venture,
 
 784 S.W.2d 64, 66 (Tex. App. 1989): “One
 
 *328
 
 broadly recognized exception to this general rule is that one joint venturer may sue another at law without resort to an accounting where the case is so simple and free from complexity that it can be disposed of easily. . . . Applying this exception, Texas courts allow a joint venturer, who has been injured by his coventurer’s default in not paying his share of expenses, to maintain an action at law to recover such expenses without the necessity of an accounting.” (Citations omitted.)
 

 In
 
 Sertich
 
 v.
 
 Moorman,
 
 162 Ariz. 407, 412, 783 P.2d 1199 (1989), the court reviewed the history and purpose of the requirement of an accounting as a precondition to an action by one partner against another and concluded that “changed conditions render the substantive and procedural bases for the [accounting] rule obsolete.” See also 2 A. Bromberg & L. Ribstein, Partnership § 405 (1994 Appendix).
 

 In the present case, the partnership agreement clearly imposed upon the defendant the obligation to make additional capital contributions equal to those required of the other partners. Moreover, General Statutes § 34-78 (a) of the Connecticut Uniform Partnership Act; General Statutes § 34-39 et seq.; provides that in settling accounts between the partners after dissolution, each partner shall contribute the amount necessary to satisfy the liabilities of the partnership. Further, § 34-78 (f) provides that any partner shall have the right to enforce such contributions “to the extent of the amount which he has paid in excess of his share of the liability. . . .”
 

 General Statutes § 34-76 (2) (a) provides that each partner who has not caused the dissolution has “the right, as against each partner who has caused the dissolution wrongfully, to damages for breach of the agreement.” Here, the defendant caused the dissolution by not paying his capital share, and the plaintiffs are
 
 *329
 
 entitled to recover that share as damages for the contract breach.
 

 The issue of the amount owed by the defendant by reason of his failure to pay his share of capital contributions being readily determined, the requirement of an accounting selves no purpose and this court finds it unnecessary. In
 
 Mazzella
 
 v.
 
 Lathouris,
 
 supra, 4 Conn. L. Rptr. 323, our Superior Court held that in an action by one of the partners against another, an accounting is not a precondition when an action for an accounting and an action for breach of the partnership agreement are brought in the same lawsuit. This court holds in the present case that an action by one partner against another may be brought without combining it with a demand for an accounting when the dispute does not involve the complexity of the partnership relationship.
 

 It may be noted further that, pursuant to § 34-76 (2) (c), if the business is continued by the other partners, the partner causing the dissolution may have the value of his interest in the partnership ascertained and paid to him, less any damages caused to his copartners by the dissolution. Significantly, although the partnership dissolved in 1991, the defendant has never sought to have his partnership interest valued, nor has he made a counterclaim for that right in the present action. Thus, his assertion that an accounting should be precedent to recovery by the plaintiffs in the present action rings hollow.
 

 The defendant contends next that the dissolution of the partnership by the plaintiffs released the defendant from his obligation to pay his capital share. For this he relies upon § 34-76 (2) (c) which provides that the partner who has wrongfully caused the dissolution shall, if the business is continued “be released from all existing liabilities of the partnership . . . .” The defendant is right that that section of the statute does
 
 *330
 
 operate to release him from the partnership obligation under the Fleet Bank of Connecticut mortgage. He has no liability under the mortgage since the plaintiffs renegotiated it after he no longer was a partner. Section 34-76 (2) (c) does not release him from his obligations to pay his capital share, however, because that is not a partnership liability; rather, it is insured by him personally to the plaintiffs. Moreover, that very statute provides that each partner who has not wrongfully caused the dissolution shall have the right as against each partner who wrongfully caused the dissolution “to damages for breach of the agreement.” General Statutes § 34-76 (2) (a). Clearly, that provision preserves the plaintiffs’ claim against the defendant for his unpaid capital contributions. Furthermore, General Statutes § 34-74 (1) provides that “[t]he dissolution of the partnership does not of itself discharge the existing liability of any partner.”
 

 Accordingly, judgment may enter in favor of the plaintiffs against the defendant for $142,000, plus interest at the statutory rate of 10 percent from March 18, 1991, to the date of this judgment.